UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA
2005 OCT -3 A 11: 10
SIGN
BY DEPUTY CLERK

NORMAN BROWN, ET AL. C. A. No. 00-957-D-M2

VERSUS

RICHARD STALDER, ET AL.

*CONSOLIDATED WITH*

DONALD WILLIAMSON C. A. No. 00-959-D-M2

VERSUS

RICHARD STALDER, ET AL.

**STATEMENT OF UNCONTESTED MATERIAL FACTS ON BEHALF OF DARREL VANNOY PURSUANT TO U.L.R. 56.1**

NOW INTO COURT, through undersigned counsel, comes Darrel Vannoy, who, in accordance with Uniform Local Rule 56.1 hereby submits the following Statement of Uncontested Material Facts in support of his Motion and Incorporated Memorandum for Summary Judgment as follows:

1. On the evening of December 28, 1999, Camp D of the Louisiana State Penitentiary located at Angola, Louisiana, was the site of a number of regularly scheduled group meetings of inmates with similar interests. These "call-outs" were taking place in the Education Building of Camp D where a number of classrooms were located.

2. Three such groups were meeting: (1) an AA/NA group where a movie was being shown; (2) a law class; and (3) band practice by a number of inmate musicians. Additionally, a number of inmates were in the Legal Aid Office. All of the plaintiffs in this litigation were in various of these areas of the Education Building.

3. At approximately 8:30 p.m., while these "call-outs" were in progress, at least six (6) of the inmates in attendance began a failed escape attempt. Those inmates were Jeffrey Clark, David Brown, David Mathis, Barry Edge, Robert Carley and Joel Durham.

RET

4. At the same time, Correctional Officer Captain David Knapps happened to be in the Education Building. Soon thereafter, one additional Correctional Officer entered the building and was detained when he was assaulted by two of the six escapees. This was Lieutenant Douglas Chaney.

5. Upon seeing some inmates running from the building, Sergeant Reddia Walker, who was stationed outside the Education Building, walked over to the door to investigate. She was grabbed and pulled into the building.

6. The first thing done by the would-be escapees was the locking and barricading of the Education Building. Keys obtained from the correctional officers were used for this purpose.

7. Shortly thereafter, Captain Knapps was murdered near the officers' restroom where his body was later found.

8. Lt. Chaney was beaten and placed in the AA/NA classroom by his assailants and Sgt. Walker was placed in the dorm bundle room where she was later found and rescued.

9. Security radios belonging to the abducted correctional officers were obtained by the escapees and were used by them to contact penitentiary personnel outside the Education Building. A number of demands were made by them.

10. Secretary Richard Stalder and Warden Burl Cain soon arrived at the scene along with other deputy and assistant wardens.

11. A SWAT team, two TACT teams and riot control officers assembled near the Education Building and awaited instructions from their superiors.

12. Secretary Stalder and Warden Cain attempted to negotiate a peaceful resolution of the situation.

13. Warden Cain handed the would-be escapees a note at the door of the Education Building stating that no charges or disciplinary actions would be filed against them if they surrendered without harming anyone. At this point, three inmates surrendered and walked out of the building. They were Jeffrey Clark, David Brown and Robert Carley.

14. Once the Education Building door was opened, Warden Cain and others at the door kept it open and would not allow it to be closed again. This allowed them entry into the building.

15. Once entry was made, Secretary Stalder and Warden Cain learned that Captain Knapps had been murdered. Because they knew two other correctional officers

were still in the building, they made the decision to forcibly extricate them.

16. Lt. Chaney was found lying on the floor in the classroom where the AA/NA meeting was taking place. He was immediately removed from the building.

17. Sgt. Walker and her abductors could be heard in the dorm bundle room. The door was closed but Warden Cain and others could hear that threats were being made by at least one of her abductors that she would be harmed. Forcible entry was made by SWAT team members.

18. During said entry, inmate Joel Durham, who had some type of home-made weapon in his hand, moved aggressively toward Sgt. Walker. Both of the inmates in the room (Durham and Mathis) with Sgt. Walker were shot by SWAT team members. Despite immediate medical treatment, Durham died from his wounds. Mathis survived after receiving medical treatment performed by Department of Public Safety and Corrections medical personnel.

19. Inmate Barry Edge was later found in the AA/NA classroom mixed in amongst other inmates including some of the plaintiffs in this litigation.

20. The SWAT team was removed from the building and two separate TACT teams went through the Education Building room by room securing all of the inmates therein. No one knew at this time which of the inmates were involved in the murder-hostage-escape attempt incident and which were not.

21. All inmates were restrained by use of plastic flex cuffs and removed from the various rooms of the building and placed in the main hallway with instructions to face the wall and remain in a kneeling position.

22. Twelve of the plaintiffs were removed from the various rooms as follows: (1) AA/NA Classroom 1: Donald Williamson, Jonah Menard, John Daniels , Norman Brown and Brian Johns; (2) Band Practice Room/Classroom 2: Mickey Lanerie, Earl Lowe, Kenneth Edwards, Tyrone Clofer and Michael Wardlaw; and (3) Legal Aid Office: Gregory Wimberly and Dennis Taylor. The thirteenth plaintiff, Robert Cooper, had exited the Camp D Education Building earlier during the incident.

23. Once all of the inmates were placed in the hallway, they were interviewed one at a time by law enforcement personnel in one of the rooms of the Education Building.

24. The clothing of the inmates was taken as evidence and each was given a jumpsuit to wear.

25. After each inmate was interviewed, he was placed back in the hallway until all of the interviews were completed. This process took a number of hours. Once this was done, the inmates were lined up and marched to an awaiting bus where they were transported to Administrative Segregation at Camp C-Tiger Unit.

26. Incident reports were written charging all of the inmates that had been in the Education Building with various offenses including threat to security and assault on an officer.

27. Pursuant to the disciplinary rules and procedures in effect at the time, all were brought before the disciplinary board within seventy-two (72) hours.

28. Darrel Vannoy did not physically abuse and had no personal involvement in the alleged physical abuse of plaintiff inmates.

29. Darrel Vannoy saw no physical abuse of plaintiff inmates.

30. Darrel Vannoy did not participate in the delivery of medical care to inmate plaintiffs and had no responsibilities in connection with decisions about plaintiff inmates' medical care.

31. Darrel Vannoy had no involvement in the disciplinary and/or ARP proceedings involving plaintiff inmates.

32. Darrel Vannoy did not retaliate against plaintiff inmates.

33. Darrel Vannoy did not deprive any plaintiff inmates of the basic necessities of life, including heat, clothing, shoes, and blankets.

34. Darrel Vannoy was not present at Camp C - Tiger Unit when plaintiff inmates were allegedly physically abused and their civil rights allegedly violated.

Respectfully Submitted:

CHARLES C. FOTI, JR.
ATTORNEY GENERAL
STATE OF LOUISIANA

L. J. Hymel (#7137)
Michael Reese Davis (#17529)
Stephen H. Shapiro (# 21076)
Special Assistant Attorneys General
SHARP HYMEL CERNIGLIA COLVIN
WEAVER & DAVIS, L.L.C.
15171 So. Harrell's Ferry Road
Baton Rouge, LA 70816
(225) 755-1060 (o)
(225) 755-1065 (fax)

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Statement of Uncontested Material Facts has been served on all counsel of record via fax and/or hand delivery and/or United States mail, properly addressed, postage prepaid, this ~~30th~~ 3rd day of ~~September~~ October, 2005.

Stephen H. Shapiro